Opinion issued May 11, 2023



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00027-CV

_____

**KAHRIN A. BRIDGES, Appellant**

**V.**

**CAROL ANN PUGH, Appellee**

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-13857**

---

## MEMORANDUM OPINION

This is an appeal from a default judgment modifying conservatorship of a child. The child's parents previously were designated as joint managing conservators. After both parents became incarcerated, the child's paternal grandmother petitioned to modify the conservatorship and for certain rights and

responsibilities for the child, who was residing with maternal relatives. Neither parent answered the grandmother's petition, and the trial court rendered a default judgment designating the grandmother as a third joint managing conservator. The child's mother appeals, contending that the default judgment must be set aside because (1) the grandmother lacked standing to bring the modification suit, (2) the trial court granted more relief than the grandmother requested, and (3) the trial court erred in finding that the child's circumstances had materially and substantially changed and that modification was in the child's best interest. Because we agree that the grandmother lacks standing, we reverse and render judgment dismissing her action for want of jurisdiction.

## Background

Carol Ann Pugh (Grandmother) is the child's paternal grandmother. She petitioned the court with continuing, exclusive jurisdiction over the child to modify its order, entered in 2016, establishing the parent-child relationship and designating the child's parents, Kahrin Bridges (Mother) and Franklin Pugh (Father), as joint managing conservators. Grandmother alleged that the child's circumstances had materially and substantially changed because both parents were incarcerated. Her supporting affidavit stated:

> [Father] and [Mother] are currently incarcerated for aggravated robbery with a deadly weapon. [The child] is currently residing with relatives of [Mother] who deny me access to the child. I have been a part of the child's life since [the child] was born. The child has lived in my

2

residence. The child and I have built a bond. I have been a consistent part of the child's life[,] and the child thrives on this consist[e]ncy. Again, both of [the child's] parents [are] incarcerated and this child needs consist[e]ncy now more than ever. Without this consist[e]ncy her emotional well-being will be significantly imp[air]ed.

I love my grandchild and I pray that this Court make me a conservator with visitation rights.

Grandmother requested that Mother's and Father's rights as joint managing conservator be modified to allow Grandmother to: (1) consult school officials about the child's welfare and educational status, (2) consult the child's medical care providers, and (3) consent for the child's medical treatment. In addition, Grandmother requested visitation on the first, third, and fifth weekend of each month and in accordance with Father's holiday visitation schedule.

Both parents were served with citation, but neither answered. In October 2021, the trial court held a hearing on Grandmother's petition. The trial court took judicial notice of its file, including the returns of citation, and concluded that both parents had been served while incarcerated but failed to answer.

Grandmother also testified. She confirmed that Mother and Father were still incarcerated. The child, who was then six years old, lived with Mother's aunt. Grandmother testified that her relationship with Mother's aunt was "spotty," she and Mother's aunt had "little to no communication," and Mother's aunt denied her access to the child on a "regular basis."

Q.   So, you really don't know how the child is doing in school or how she is faring; is that correct?

A.   No, sir.

Q.   To the best of your knowledge [Mother's aunt] has no guardianship over this child?

A.   To my knowledge, no.

Q.   She has not tried to modify any court order regarding this child; is that correct?

A.   To my knowledge, no.

When asked whether she needed "some kind of rights to make sure [the child] is doing okay," Grandmother answered affirmatively. She explained that she wanted the rights awarded to Father in the 2016 order, including standard visitation and the right to talk to school officials and medical doctors. She stated, without explanation, that the requested modification was in the child's best interest.

After Grandmother testified,[1] the trial court granted the relief Grandmother requested "[b]ased on the pleadings on file [and] the testimony and evidence presented." And three days later, the trial court rendered a default order modifying the child's conservatorship. The order recites the trial court's findings that "the material allegations in [Grandmother's] petition to modify are true and that the requested modification is in the best interest of the child." The court designated

---

[1]   Grandmother's testimony occupies four pages of an eight-page transcript. No exhibits were offered or admitted into evidence.

4

Mother, Father, and Grandmother as the child's joint managing conservators. Among other things, Grandmother, as the nonparent managing conservator, was granted the requested rights. The trial court incorporated a standard possession order as between Mother and Grandmother. Father was not awarded any specific periods of possession.

Mother timely moved to set aside the default judgment and for a new trial. Although Mother did not cite the *Craddock* standard, she addressed the *Craddock* elements in her motion. *See Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939) (default judgment should be set aside and a new trial ordered if (1) the defendant's failure to answer or appear was not intentional or the result of conscious indifference, but was due to mistake or accident; (2) defendant's motion for new trial sets up a meritorious defense; and (3) granting defendant's motion would not delay or otherwise work an injury to the plaintiff). Mother argued:

- Her failure to answer was a mistake because she was incarcerated when she was served with Grandmother's petition, her "focus was on the criminal trial," and she accidentally missed the answer deadline.

- She has meritorious defenses because Grandmother lacks standing to petition for a modification of the child's conservatorship, the person having actual care, custody, and control of the child (Mother's aunt) was not served, and the award of joint managing conservatorship to Grandmother was not in the child's best interest.

- Grandmother would not be prejudiced by any delay resulting from a new trial.

5

The trial court denied Mother's motion in a written order noting, among other things, that Mother had presented no evidence that her failure to answer was due to accident or mistake.

**Standing**

In her first issue, Mother complains that Grandmother did not show that she has standing under Family Code section 102.004(a)(1) to seek a modification of the 2016 order, and thus the trial court lacked subject matter jurisdiction to render the default judgment in Grandmother's favor. We agree.

"Standing is implicit in the concept of subject-matter jurisdiction, and it is a threshold issue in a child custody proceeding." *Rolle v. Hardy*, 527 S.W.3d 405, 415 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). Standing, like other issues implicating a court's subject matter jurisdiction, is a question of law that we review de novo. *In re H.S.*, 550 S.W.3d at 155; *Rolle*, 527 S.W.3d at 415.

In ordinary circumstances, "standing is based on the existence of certain facts, not the existence of certain proof." *In re K.D.H.*, 426 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) (holding that to determine whether plaintiff in civil case has alleged facts demonstrating court's jurisdiction, we construe pleadings liberally in plaintiff's favor and consider relevant evidence when

6

necessary to resolve the jurisdictional question). But when, as here, questions of standing impact a parent's right to decide how to best care for her child free from interference by nonparents, the Texas Legislature has enacted a different standard. *Rolle*, 527 S.W.3d at 415; *see In re L.D.F.*, 445 S.W.3d 823, 829 (Tex. App.—El Paso 2014, no pet.) ("[T]he jurisdictional requirement of standing helps ensure that a parent's constitutional rights are not needlessly interfered with through litigation." (internal quotation omitted)).

Texas confers standing to bring a suit affecting the parent-child relationship (SAPCR) to people who meet the Family Code's statutory framework. *See, e.g.*, *K.D.H.*, 426 S.W.3d at 883 (when standing is conferred by statute, the statute itself serves as the framework for a standing analysis); *see also H.S.*, 550 S.W.3d at 155 (recognizing standing to bring SAPCR is governed by statute). Relevant here, a person has standing to request modification of a conservatorship if, when she filed her petition, she would have standing to bring an original SAPCR under Chapter 102 of the Family Code. TEX. FAM. CODE § 156.002(b).

A grandparent has standing under Chapter 102, Section 102.004(a)(1) "if there is satisfactory proof to the court that . . . the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]" *Id.* § 102.004(a)(1); *see also Mauldin v. Clements*, 428 S.W.3d 247, 263 (Tex. App.—Houston [1st Dist.] 2014, no

pet.) (courts use statutory framework to determine grandparent's standing under Section 102.004). This provision is unusual because, in it, the Texas Legislature confers standing based on the existence of proof rather than the pleading of facts. *Rolle*, 527 S.W.3d at 416, 419; *K.D.H.*, 426 S.W.3d at 885.

This Court has held that "satisfactory proof" for Section 102.004(a)(1) means "proof established by a preponderance of the evidence as the facts existed at the time the suit or intervention was filed." *Compton v. Pfannenstiel*, 428 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see Mauldin*, 428 S.W.3d at 263 ("In a family law case, when the petitioner is statutorily required to establish standing with 'satisfactory proof,' the evidentiary standard is preponderance of the evidence."). The burden of proof is on the grandparent asserting standing. *See Rolle*, 527 S.W.3d at 417; *Compton*, 428 S.W.3d at 885.

"Where a trial court appoints a parent and nonparent as joint managing conservators, it implicitly rules that [the] parent's sole custody would significantly impair the child's physical health or emotional development." *L.D.F.*, 445 S.W.3d at 830. Here, because the trial court permitted Grandmother's petition and joint custody, we must assume the trial court impliedly found that Mother's and Father's joint managing conservatorship would significantly impair the child's physical health or emotional development. *See id.* The trial court's finding is not supported.

Grandmother needed to show by a preponderance of the evidence that "some specific, identifiable behavior or conduct" of the parents would probably cause significant impairment to the child's physical health or emotional development. *See L.D.F.*, 445 S.W.3d at 830; *Mauldin*, 428 S.W.3d at 263; *see also* TEX. FAM. CODE § 102.004(a)(1). "'[P]hysical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent are all factors the trial court may consider in assessing significant impairment." *L.D.F.*, 445 S.W.3d at 830; *see Compton*, 428 S.W.3d at 884–85 (considering grandmother's evidence of parent's "drug use, recent criminal arrests, and extreme neglect of her children during the preceding eight months" as factors relevant to standing analysis); *In re Vogel*, 261 S.W.3d 917, 922 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (evidence that child enjoyed strong relationship with mother who died, that father took child from funeral without notifying custodial grandmother, that father was long-term alcoholic, that father could not provide for child's financial needs, and that it would be "harmful" for child to live with father was evidence of substantial impairment establishing standing).

But "evidence that merely raises a surmise or speculation of possible harm is insufficient to establish" an inference that "the specific, identifiable behavior or conduct will probably result in the child being emotionally impaired or physically harmed." *Mauldin*, 428 S.W.3d at 263 (internal quotation omitted); *Whitworth v.*

9

*Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A nonparent cannot meet this burden with evidence showing that she would be a better custodian of the child, that she has a strong and ongoing relationship with the child, or that the parent would not have been a proper custodian in the past. *Rolle*, 527 S.W.3d at 420; *Mauldin*, 428 S.W.3d at 263.

Grandmother contends she satisfactorily proved a significant impairment of the child's physical health or emotional development through her testimony that Mother and Father were incarcerated. While it is true that courts routinely consider the instability that a parent's criminal activity can cause a child, the evidence of Mother's and Father's incarceration did not raise more than a surmise or speculation of possible harm here. *See, e.g.*, *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (engaging in criminal conduct subjects children to uncertainty and instability because of probability that parent will be jailed, leaving children alone). Beyond Grandmother's statement that the child resided with a maternal aunt and that the maternal aunt denied Grandmother access to the child, there is no evidence of the child's circumstances. For instance, Grandmother presented no evidence of the nature or length of either Mother's or Father's incarceration apart from the attestation in her affidavit that they were jailed for the offense of aggravated robbery. Grandmother presented no evidence of how the child came to reside with the maternal aunt—whether by the consent of Mother or Father

or both. In fact, Grandmother testified that she knew very little about the child's circumstances and that the purpose of her petition to modify the conservatorship order was to discover that information.

Without that evidence, the trial court could not reasonably a modification was "necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." TEX. FAM. CODE § 102.004(a)(1). We therefore hold that Grandmother failed to establish her standing to seek modification of the trial court's conservatorship order, and that the trial court lacked jurisdiction to act on her petition.

## Conclusion

We reverse the trial court's default judgment and render judgment dismissing Grandmother's action for want of jurisdiction.


Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.